# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

ELIZABETH REYES     )
           )
v.            )  Case No. __5:19-cv-00663__
           )
AETNA LIFE INSURANCE COMPANY; )
and FIRSTSERVICE RESIDENTIAL, INC. )
EMPLOYEE BENEFITS PLAN   )

## COMPLAINT

Plaintiff Elizabeth Reyes brings this action for violations of the Employee Retirement Income Security Act of 1974 ("ERISA") committed by the defendants named herein.

1. This suit is brought pursuant to 29 U.S.C. § 1132 in order to secure benefits due to Plaintiff through the FirstService Residential, Inc. Employee Benefits Plan, (the "Plan").

2. Plaintiff seeks past due and future long term disability benefits, waiver of premium benefits under the disability and life policies issued by or administered by Defendants, as well as any other direct or ancillary benefits (such as continued coverage and waiver of premiums) available through the Plan that are contingent upon the finding of disability under the Plan.

3. Plaintiff also seeks payment of unpaid interest on Defendant's 25-month delay in making LTD benefit payments under the Plan.

4. Plaintiff also seeks prejudgment interest.

5. Plaintiff seeks benefits based on the several conditions documented in her

medical records and claims documents, including among other things:

> Total hip replacement, L4-L5-Sl fusion and laminectomy, low back pain, lumbar radiculopathy, displacement of lumbar intervertebral disc, lumbar spondylosis, lumbar spine narrowing, lumbar disc bulging and anterolisthesis, disc herniation, spondylotlytic spondylolisthesis, degenerative disc disease, radiculopathy, neuropathy, limited ROM, left carpal tunnel release, spinal screws crushing part of her spinal nerves, C-section, uterine ablation, severe osteoarthritic changes in the hip, + Faber test, fatigue, +Ober test, poor reflexes, degenerative arthritis, aortic calcification, total hip arthroplasty, fibromyalgia, chronic pain, Raynaud's Syndrome, Attention Deficit Hyperactivity Disorder, nausea, generalized anxiety disorder, panic attacks, constipation, insomnia, hypertension, bronchitis, depression, obesity, conjunctivitis, lymphadenitis, otitis externa, neck pain, knee pain, gastroenteritis, palpitations, hidradenitis, malaise, allergic rhinitis,  lumbago, and right hip osteoarthritis.

6.      These conditions and the large amount of medications they require result in chronic restrictions and limitations which Plaintiff's physicians have assessed as being permanent and total in nature.

7.      Suit is also brought to enforce the statutory obligation of the above-named defendants to produce all instruments and documents pertaining to administration of her ERISA employee welfare benefits required under 29 C.F.R. § 2560.503-1.

## JURISDICTION

8.      Jurisdiction is appropriate under 28 U.S.C. § 1331 in that 29 U.S.C. §1132 confers jurisdiction upon the district courts of the United States where, as here, Plaintiff's claims relate to an "employee welfare benefit plan" and/or "employee pension plan" as those terms are defined within 29 U.S.C. § 1001, et. seq.

## VENUE

2

9. Venue is appropriate in that a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred within this district. **Venue is also proper in this District and Division pursuant to 29 U.S.C. §1132(e)(2) and** 28 U.S.C. § 1391 **because Defendants maintain business activity in and are in this district.**

## <u>PARTIES</u>

10. Plaintiff Elizabeth Reyes is a resident of the State of Texas.

11. Defendant Aetna Life Insurance Company ("Aetna") is a foreign corporation incorporated in the State of Connecticut. It maintains its principal place of business in Hartford, Connecticut.

12. Aetna is a "fiduciary" of the Plan as that term is defined by 29 U.S.C. § 1002(21).

13. Aetna exercised authority or control respecting the management or disposition of the Plan assets, and is, therefore, a "fiduciary" as that term is defined by 29 U.S.C. § 1002(21).

14. Aetna provides services to the Plan at issue, and as such is a "party in interest" as that term is defined by 29 U.S.C. § 1002(14).

15. Aetna served as the insurer and/or claims administrator for the Plan.

16. Aetna's designated agent for service of process is:  CT Corporation System, 1999 Bryan St., Suite 900, Dallas, Texas 75201-3136, or wherever it may be found.

17. FirstService Residential, Inc. Employee Benefits Plan, (the "Plan") is an "employee welfare benefit plan" as defined within 29 U.S.C. § 1001, <u>et</u>. <u>seq</u>., and may

be served with process by serving:   Director, National Benefits c/o FirstService Residential, Inc., 1855 Griffin Rd Ste A-330, Dania Beach, FL 33004, or wherever it may be found.

## THE PLAN

18.     The Plan was funded by insurance policies sold by Aetna, the company which also underwrote the policies. As such, the Plan is insured by Aetna.

19.     The policies, also sometimes referred to as the "Plan," were provided for the purpose of conferring a benefit upon Plaintiff and other employees. They qualify as an employee welfare benefit plan as defined in 29 U.S.C. § 1002(1).

20.     Plaintiff qualifies as a participant and a beneficiary under the Plan as that term is used in 29 U.S.C. § 1132.

21.     Under the terms of the Plan providing for disability benefits, Plaintiff is "disabled" as defined by the Plan.

## CLAIM HISTORY

22.     Until her disability, Plaintiff was employed by FirstService Residential, Inc. as a Portfolio Manager, also referred to as Association Manager. Her job required managing a number of different residential communities.

23.     Plaintiff's back problems forced her to undergo lumbar fusion surgery on October 28, 2016. October 27, 2016 was her last day of work.

24.     She submitted a disability claim on January 5, 2017, indicating that her return to work was not expected until April 28, 2017.

25.     Aetna denied her LTD claim by letter dated February 1, 2017, but Mrs. Reyes never received it because it was improperly addressed. Aetna denied the claim due to the 180-day elimination period having not been met. In other words, Mrs. Reyes filed her claim too early because she could not begin receiving LTD benefits until April 26, 2017.

26.     Mrs. Reyes called Aetna a number of times after filing her claim. She did not find out it had been denied until December 2017. She immediately appealed upon discovering the denial.

27.     Aetna denied her appeal on January 22, 2018, asserting that it was untimely.

28.     Mrs. Reyes filed a Better Business Bureau complaint, and her claim was reopened when Aetna's addressing error was discovered.

29.     On April 5, 2018, her claim was denied a third time. This time, Aetna asserted a pre-existing condition excluded coverage for her spinal surgery.

30.     The Plan excluded coverage for disabilities caused by any conditions Mrs. Reyes was diagnosed or treated for from October 2015 to December 2015.

31.     Aetna's denial was based entirely upon an in-house nurse's observation that a November 19, 2015 doctor's visit listed that Mrs. Reyes had hip problems in the past. That doctor's visit was limited to addressing a sinus infection.

32.     Aetna used this to speculate that because hip pain can sometimes be related to back problems, Mrs. Reyes's spinal surgery and any resulting disability was excluded by a pre-existing condition. No physicians were consulted by Aetna before

issuing this denial, and this conclusion directly contradicted the opinions of Mrs. Reyes's treating physicians.

33.     Aetna only sought medical records to support its pre-existing condition denial, ignoring the substantive disability question altogether.

34.     Mrs. Reyes requested a copy of Aetna's claim file on May 23, 2018.

35.     The claim file included a May 2018 report obtained by Aetna from Dr. Hoenig. Aetna requested Dr. Hoenig's report on May 3, 2018. Dr. Hoenig's report stated there was no basis for applying the pre-existing limitation exclusion. Despite receiving this information, Aetna took no action to correct its own erroneous denial promptly upon discovering it.

36.     Mrs. Reyes completed her appeal on August 13, 2018. That letter laid out a number of procedural and substantive defects in Aetna's administration of Mrs. Reyes's claim. Among other things, Aetna's denial involved a medical opinion being offered by a layperson claims handler; failed to have the claim reviewed by a behavioral unit technician, as recommended by its nurse reviewer; ignored the majority of Mrs. Reyes's conditions; failed to provide all "relevant" materials required under Department of Labor regulations; and appeared to set up a denial based upon entirely new grounds on appeal, violating ERISA's claims procedures.

37.     Aetna denied Mrs. Reyes's claim a fourth time on August 22, 2018. This time, it abandoned the pre-existing limitation exclusion and found that she had failed to meet the 180-day elimination period. Thus, Aetna returned to its first reason for denying her claim, but for different reasons.

38.     That decision involved Aetna's first attempt to address Mrs. Reyes's capabilities and the requirements of her position. The decision relied entirely upon the opinion of Dr. Hoenig.

39.     Dr. Hoenig's opinion was explicitly limited to being from a "pain management perspective only," and it declined to address the majority of her conditions. He opined that Mrs. Reyes was totally disabled for the six weeks after her October 28, 2016 spinal surgery. From October 28, 2016 onward, Dr. Hoenig believed Mrs. Reyes was limited to 1) walking up to 6 hours in an 8 hour day, 2) occasional lifting and carrying 20 pounds and frequently lifting and carrying 10 pounds, and 3) occasionally bending, stooping, kneeling, crouching, and climbing. He claimed Mrs. Reyes had no side effects from the numerous medications she was taking and indicated he could not predict how long the restrictions would last, recommending reassessment in 6 months.

40.     Aetna also obtained a vocational analysis, but it did not provide any of the medical records to that reviewer.

41.     Aetna acknowledged Mrs. Reyes was entitled to another appeal under the circumstances, so she filed the appeal and indicated she would submit more information and that she would inform Aetna of when her appeal was finalized.

42.     Aetna then began communicating directly with Mrs. Reyes instead of her lawyer, misstated the amount of time she had to perfect her appeal, and threatened to terminate the appeal far in advance of the 180 days she was entitled to. Aetna

repeatedly cut short the arbitrarily curtailed deadlines it set for Mrs. Reyes throughout this entire administration.

43.     On February 21, 2019, the final appeal letter was submitted via certified mail along with a CD containing approximately 1,400 pages of additional medical records and evidence.

44.     Six days later, Aetna sought the opinion of Dr. Kerstman regarding Mrs. Reyes's disability, again limiting its review solely to a pain management perspective. Aetna provided fewer documents for Dr. Kerstman to review than it sent Dr. Hoenig the year before. Dr. Kerstman submitted his medical record review to Aetna on March 13, 2019.

45.     On March 4, 2019, Mrs. Reyes was advised that Aetna had begun reviewing her appeal on February 27, 2019 because it had not received a final appeal. Through counsel, she immediately re-sent her appeal letter by fax.

46.     Mrs. Reyes's counsel spoke with the Aetna claims handler on March 6, 2019. She indicated Aetna had received 9 pages, which consisted of some blank forms and some Bates numbered documents that fell in the middle of the documents contained on the CD enclosed with the February 21, 2019 appeal letter. It is unclear how Aetna could have received those documents without receiving the rest.

47.     Another copy of the appeal letter and CD were sent on March 6, 2019. The certified mail stub for the originally sent appeal was later returned dated March 8, 2019. The second was returned and dated as being received March 16, 2018.

48.     Aetna requested an addendum to Dr. Kerstman's opinion based upon some of the newly submitted documents. The vast majority of claim file records were not provided to Dr. Kerstman.

49.     Dr. Kerstman's first review only involved 200 pages of the over 4,000 pages of evidence at the time. Dr. Kerstman's first report indicated that he spoke with Dr. Ybarra on March 11, 2019. His summary was inaccurate and directly contradicts Dr. Ybarra's records, most of which had not even been provided to Dr. Kerstman. Dr. Ybarra denied ever speaking with Dr. Kerstman and indicated his call was refused in April 2019.

50.     Dr. Ybarra's treatment notes indicate a number of objective findings and test results concerning Mrs. Reyes's capabilities. Further, he recommended a spinal cord stimulator being surgically implanted, a last resort option for spinal pain problems. He also recommended psychological evaluation.

51.     As part of Dr. Kerstman's second report, he spoke with Dr. Liu on March 29, 2019. Dr. Liu had not seen Mrs. Reyes for a year and a half at that point and Dr. Kerstman did not provide Dr. Liu with any updated records. Given the circumstances, Dr. Liu declined to opine on Mrs. Reyes's present restrictions or limitations. However, Dr. Liu **did not** opine that Mrs. Reyes suffered from no impairments.

52.     Dr. Kerstman then spoke with Dr. Naron, Mrs. Reyes' primary care physician, on March 29, 2019. Dr. Naron explained that she was incapable of working in any capacity and had last seen her at roughly a week before the call.

53.     Dr. Kerstman's report ignored the substance of his conversations with Mrs. Reyes's physicians. Instead, he provided a cursory summary of those conversations framed entirely within the arbitrarily narrow context of the three questions Aetna wanted him to ask. His summation of the doctors' responses omitted significant details.

54.     Dr. Kerstman made 3 calls to Dr. Phelps over the course of 4 business days, but was unable to reach him. The last call was on April 4, 2019.

55.     The next day, Aetna sent a letter to the undersigned indicating that it could not reach a decision until it spoke with Dr. Phelps. The letter indicated that a report had been sent to Dr. Phelps and that Mrs. Reyes would have until May 15, 2019 before Aetna continued its appeal review.

56.     On April 15, 2019, Aetna advised Mrs. Reyes that it needed an extra 45 days to make its appeal decision.

57.     Dr. Kerstman's second report, the one sent to Dr. Phelps, omitted all references to Dr. Kerstman's contact with Dr. Ybarra, failed to include a medication list, and ignored the majority of Mrs. Reyes's conditions and diagnoses.

58.     On April 16, 2019, Mrs. Reyes requested a copy of the report that was sent to Dr. Phelps, so that she could understand what issues needed to be addressed on appeal.

59.     In response, Aetna rushed out its fifth decision on April 26, 2019, again cutting short the time it promised Mrs. Reyes to submit additional information. This

time, Aetna concluded that Mrs. Reyes **was** disabled from April 26, 2017 to December 31, 2018, but it denied benefits after that point.

60.     Aetna's fifth denial once again came up with an entirely new basis for its decision. However, Aetna twice refused to allow any additional appeal or administrative remedies.

61.     Given the timing of Plaintiff's appeal submission, there were little to no medical records submitted for the dates Aetna denied benefits. Aetna gave Plaintiff no warnings that would allow her to address this newly manufactured problem.

62.     That **<u>fifth</u>** denial was based entirely upon the opinion of Dr. Kerstman. His opinion was that Mrs. Reyes was 1) completely disabled from October 28, 2016 to December 18, 2016, 2) limited to stationary work from December 18, 2016 to January 3, 2018, 3) not limited at all from January 3, 2018 to October 9, 2018, 4) totally disabled for six weeks after her total hip replacement surgery on October 29, 2018, and 5) not limited at all afterwards.

63.     Because Dr. Kerstman's opinion was limited to a pain management perspective, his opinion disregarded the vast majority of Mrs. Reyes's conditions, including doctor's observations that she required a cane for ambulation. It also lacked foundation or any value to Aetna.

64.     Dr. Kerstman acknowledged Mrs. Reyes's chronic low back pain and opined the prognosis for recovery was poor, but he somehow concluded that Mrs. Reyes's chronic back pain had no impairing effects at all.

65.     Dr. Kerstman did not explain how he could determine the impact of Mrs. Reyes's pain on her functional capacity or the level of pain she was experiencing, particularly without ever examining her. His opinion is essentially that pain cannot cause impairment, an interesting perspective for a pain management physician to take.

66.     There is no objective evidence requirement under the policy. The policy does not contain any exclusions pertaining to pain.

67.     At least two courts have found it was unreasonable for an ERISA insurer to deny benefits based upon Dr. Kerstman's opinions. *Collins v. Liberty Life Assur. Co. of Boston*, 988 F. Supp. 2d 1105, 1129 (C.D. Cal. 2013) (finding denial of benefits was unreasonable because it relied upon the opinion of Dr. Kerstman and other reviewers who made no attempt to explain why they concluded the claimant was not disabled and recited disingenuous descriptions of surveillance and other evidence); *Greenwald v. Liberty Life Assur. Co. of Boston*, 932 F. Supp. 2d 1018, 1044 (D. Neb. 2013) ("Kerstman's review stated a conclusion that was 'arguably on a different plane than the proper inquiry.'"). Aetna was made aware of both of these opinions in this claim. Its ongoing reliance on his opinion is a breach of its fiduciary duty to Mrs. Reyes.

68.     Dr. Kerstman also failed to explain why he disagreed with the opinion of her primary care physician, why he believed so many medications would have no side effects whatsoever, why he disagreed with the scientific and governmental literature concerning those medications, or how he arrived at the arbitrary six-week time frame for Mrs. Reyes's complete recovery from total hip replacement surgery.

69.    Upon information and belief, Dr. Kerstman plucked this number from the Medical Disability Advisor Handbook (or a similar reference material like MDGuidelines) provided to reviewers by Aetna and Reliable Review Services (RRS). His assessment was not based upon any individualized assessment of Mrs. Reyes's condition, co-morbid conditions, or any of her particular circumstances.

70.    Dr. Kerstman and Aetna failed to indicate that any reference materials or guidelines were actually consulted in preparing his opinion.

71.    It is RRS's practice to electronically affix physician reviewers' signatures after their submissions have been edited and revised by Quality Assurance Nurses. Upon information and belief, it followed that practice in this claim, including with Dr. Kerstman's signature.

72.    No additional vocational analysis was performed, and there was no acknowledgement of the vocational analysis submitted by Mrs. Reyes as part of her appeal.

73.    Aetna has a well-documented history of biased, cursory medical reviews. One recent example was when its medical director Dr. Jay Ken Iinuma testified under oath that in all his years at Aetna, he never actually reviewed an insured's medical file.

74.    Aetna is currently under investigation for practices testified to by Dr. Iinuma, such as training its physicians not to review records. On information and belief, it has followed those same practices in Mrs. Reyes's claim.

75.    Aetna uses claims analytics and predictive modeling to drive the way in which claims are handled, which employees are chosen to handle a claim, and the

claim's ultimate result. These tools base decisions primarily on factors such as the amount of benefits Aetna will have to pay and the statistical likelihood it can save money by denying a claim. These things have nothing to do with whether a particular claimant is disabled or the promises made in the relevant policy.

76.     The manner in which Mrs. Reyes's claim was handled makes it clear it was driven by financial factors. It was not the non-adversarial review conducted by a disinterested fiduciary acting solely in Mrs. Reyes's best interests required by ERISA.

77.     To date, Mrs. Reyes still has not been provided a complete claim file, and Aetna has ignored the fiduciary duty exception to privilege. Aetna has also refused to produce the materials generated by Allsup on Aetna's behalf. The disability claim file produced omits numerous records, particularly those involving correspondence exchanged with outside parties and notes generated during the course of its claims administration (such as those taken by its medical reviewers when talking with Plaintiff's medical providers).

78.     In administering the disability claim, Aetna has committed numerous breaches and errors including the following:

(a)     Targeting Plaintiff's claim for denial when it was learned her claim was governed by ERISA;

(b)     Failing to take any meaningful measures to insulate the claims personnel who handled Plaintiff's claim from Defendants' inherent conflict under the Supreme Court case *Glenn v. MetLife* and instead allowing its profit motive to influence these persons to engineer the

termination and closure of Plaintiff's claim;

(c)    Withholding numerous relevant documents and information from Plaintiff during the claims process;

(d)    Depriving Plaintiff of the ability to obtain a full and fair review of her claim;

(e)    Taking an adversarial posture against Plaintiff instead of a fiduciary posture by openly searching for ways to avoid paying part or all of her claim;

(f)    Failing to accord any weight at all to Plaintiff's medical providers and instead relying on error-prone and inattentive "paper reviewers" to determine the medical cause of Plaintiff's overall disability;

(g)    Purposefully limiting and curtailing the review of medical consultants and otherwise improperly exerting influence on them to opine against payment of benefits;

(h)    Purposefully and persistently misleading Plaintiff into believing that she did not need to submit any additional medical documentation in support of the claim and otherwise refusing to tell Plaintiff what she needed to provide before her claim could be perfected and paid;

(i)    Unreasonably and arbitrarily overruling all of the professionals who personally examined Plaintiff or allowing any of them the

opportunity to "peer review" Defendants' reviewers after Plaintiff completed her appeal (essentially conducting a one-way medical review process);

(j)     Failing to give Plaintiff's claim a full co-morbid review and give any consideration to how her conditions and medications impacted one another; and

(k)     Conducting a new review on appeal creating new "evidence" and an entirely new decision to which Plaintiff had no opportunity to respond administratively.

79.     Despite Plaintiff's established disability under the terms of her Plan, taking into account her condition as a whole, and her physicians' submission of medical records supporting those restrictions, the Aetna claims team determined that Plaintiff was capable of working.

80.     Aetna failed to provide Plaintiff with a meaningful opportunity for a full and fair review of her claims for benefits as required by 29 U.S.C. § 1133 and 29 C.F.R. 2560.503-1.  Among other things, they subjected her to a secret second determination when they refused to provide new information upon which they relied in considering Plaintiff's appeal.

81.     Aetna refused to provide Plaintiff with relevant documentation concerning her Plan and her claim generally which controlled how her claim was administered.

82.     Aetna's decision process in this matter did not comport with 29 U.S.C. §

1133's requirement that any notice of the denial must contain the specific reasons for such denial, written in a manner calculated to be understood by the participant, and must comport with Department of Labor Regulations.

83.     Plaintiff has exhausted all Plan remedies.  As such, this case is ripe for determination.

**COUNT I**

**RELIEF UNDER 29 U.S.C. § 1132(a)**

84.     Plaintiff adopts and incorporates all of the paragraphs above as though fully set forth herein.

85.     The Plan is deemed "employee welfare benefit plan" and/or "employee pension plan" as those terms are defined in 29 U.S.C. § 1001, et. seq.

86.     Plaintiff is a "participant" and a "beneficiary" in the employee welfare benefit and/or pension plan as those terms are defined under 29 U.S.C. § 1001, et. seq.

87.     Plaintiff is disabled under the terms of the employee welfare benefit plan as to long term disability benefits and life waiver of premium benefits.

88.     Defendants' termination of the Plaintiff's benefits was not and is not supported by substantial evidence.

89.     Defendants denied Plaintiff's benefits to which she was entitled under the terms of the employee welfare benefit plan/insurance policy or policies by refusing to provide or discontinuing payment of benefits.

90.      The decision-making process did not comport with 29 U.S.C. § 1133's requirement that any notice of the denial must contain the specific reasons for such

denial, written in a manner calculated to be understood by the participant, and must comport with the Department of Labor Regulations.

91.     The decision-making process did not provide a reasonable opportunity to Plaintiff for a full and fair review of the decision denying the claim, as is required by 29 U.S.C. § 1133 and 29 C.F.R. 2560.503-1.

92.     The appellate procedures did not provide Plaintiff with a full and fair review.

93.     Defendants' actions were wrong, unreasonable, and arbitrary and capricious and in violation of the terms of the employee welfare benefit plan/insurance policy.

94.     Aetna's claims process and claims decisions were tainted by conflict of interest which motivated claims personnel to deny Plaintiff's claim.

95.     As a direct and proximate result of the conduct of Defendants in failing to provide benefits for Plaintiff's disability and/or terminating benefits, and in failing to provide a full and fair review of the decision to deny benefits and/or terminate benefits, Plaintiff has been damaged in the amount equal to an amount of benefits to which Plaintiff would have been entitled under the Plan, in an amount equal to future benefits payable while Plaintiff remains disabled under the terms of the Plan, to the cost of coverage and amount of any additional coverages (such as Life and AD&D coverage) afforded under the plan in the event of a disability finding.

**STANDARD OF REVIEW**

96.     The default standard of review for denial of a benefit claim is *de novo*. Where the Plan or Policy confers discretion on the Claims Administrator, an abuse of discretion standard of review may apply.

97.     The Plan or Policy may contain a discretionary clause or language Aetna may contend affords it discretion to determine eligibility for benefits, to interpret the Policy, and determine the facts. Aetna's denial under this standard of review, if any, was an abuse of discretion. It was arbitrary and capricious.

98.     If discretion applies, the Court should afford Aetna less deference in light of its financial conflict of interest. Aetna's conflict of interest is both structural and actual. Its structural conflict results from its dual role as the adjudicator of Reyes's claim and as the potential payor of that claim.

99.     Aetna's actual financial conflict is revealed in the policies, practices, and procedures influencing and motivating claim delays and denials for financial gain. Aetna's financial conflict is also revealed in the high return gained from the delay in payment or denial of claims.

100.    Each of these grounds, on information and belief, was a motive to deny Reyes's claim, along with the delay in payment or denial of claims of other Aetna policyholders and claimants.

101.    In light of its financial conflict, Aetna should be given little or no discretion in its claims decision.

102.    Alternatively, the standard of review of this claim should be *de novo,* affording Aetna no discretion in its interpretation of the terms of the Policy and Plan or

in its factual determinations. Both factual conclusions and legal determinations are reviewed *de novo* by the Court. *Ariana v. Humana Health Plan of Texas, Inc.*, 884 F.3d 246 (5th Cir. 2018).

103.   The Plan or Policy was delivered in Texas and is subject to the laws of that jurisdiction. Accordingly, Texas law applies under the ERISA savings clause. Texas has banned the use of discretionary clauses in insurance policies issued in this state. TEX. INS. CODE §1701.062; 28 Tex. ADMIN. CODE §3.1202. Accordingly, review of Reyes's claim and Aetna's claims handling conduct, both in its interpretation of terms of the Policy and the Plan, and in its determination of the facts, should be *de novo.*

104.   In addition, Aetna's deemed denial, and its failure to provide a full and fair review are additional independent reasons for de novo review of this claim.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Elizabeth Reyes respectfully requests this court find jurisdiction and venue appropriate, and after trial, grant her the following relief:

a.   Award Plaintiff past benefits due and payable under the terms of the employee welfare benefit plan/insurance policy(ies) and/or pension plan pursuant to 29 U.S.C. § 1132(a)(1);

b.   Enter a declaratory judgment as to Plaintiff's entitlement to future benefits and an appropriate order directing the Defendants to pay all similar claims of Plaintiff in the future pursuant to 29 U.S.C. § 1132(a)(1);

c.   If Defendants voluntarily pay all past due benefits, enter a declaratory judgment as to Plaintiff's entitlement to future benefits, along with

entering an appropriate order directing Defendants to pay similar claims to Plaintiff in the future, or in the alternative, for the Court to remove Defendants from their fiduciary roles in the administration of the Plan, and to appoint a special master to substitute for this Defendant with the special master having the authority to make all determinations as to Plaintiff's entitlement to future benefits;

d.     For a judgment against the Defendants awarding Plaintiff prejudgment interest, costs and expenses, including the reasonable attorneys' fee as permitted under 29 U.S.C. § 1132(g)(1);

e.     For an order enjoining Defendants from further breaches of fiduciary or co-fiduciary duties, and direct that Defendants exercise reasonable care, skill, prudence, and diligence in the administration of Plaintiff's claim;

f.     For an order finding Defendants jointly and severally liable for the breaches described herein;

g.     For an order requiring Defendants to provide Plaintiff with any additional benefits to which the Plaintiff would be entitled pursuant to a finding that the Plaintiff is disabled under the Plan(s) and/or "programs" and specifically that the Plaintiff is entitled to waiver of premium benefits and continued coverage for all benefits she is entitled to under the terms of the Plan if disability benefits are awarded; and

h.     Such other relief as may be deemed just and proper.

Respectfully submitted,


By:_____/s/ Amar Raval_____
       Amar Raval, TBA #24046682
       S.D. No. 619209
       Berg Plummer Johnson & Raval LLP
       3700 Buffalo Speedway, Suite 1150
       Houston, TX 77098
       (713) 526-0200
       (832) 615-2665 (Fax)
       araval@bergplummer.com

       ATTORNEYS FOR PLAINTIFF


**Defendants to be served via certified mail at the following addresses:**

Aetna Life Insurance Company
c/o CT Corporation System,
1999 Bryan St., Suite 900,
Dallas, Texas 75201-3136.

FirstService Residential, Inc.
Employee Benefits Plan
Director National Benefits
c/o FirstService Residential, Inc.,
1855 Griffin Rd Ste A-330,
Dania Beach, FL 33004